OPINION
{¶ 1} Appellant, Brett Cox, appeals from the July 1, 2004 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, overruling his objections and adopting the magistrate's decision.
 {¶ 2} On January 26, 2004, a complaint was filed averring that appellant, age thirteen, was a delinquent child, and indicating that on or about October 29, 2003, he did, knowingly receive, retain or dispose of property of another which, if committed by an adult, would have constituted receiving stolen property, a misdemeanor of the first degree, in violation of R.C.2913.51(A). On February 5, 2004, appellant denied the foregoing charge.
 {¶ 3} On April 12, 2004, an amended complaint was filed against appellant charging him with having committed acts on or about October 29, 2003, which, if committed by an adult, would have constituted one count of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2); one count of receiving stolen property, a misdemeanor of the first degree, in violation of R.C. 2913.51(A); and one count of petit theft, a misdemeanor of the first degree, in violation of R.C.2913.02(A)(1). Appellant denied the charges on April 12, 2004.
 {¶ 4} An adjudicatory hearing was held before a magistrate on May 6, 2004. At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion, which was again overruled by the trial court.
 {¶ 5} At that hearing, fifteen-year-old Victoria Belke ("Belke") testified for the state that after returning from school on or about October 29, 2003, she found that her home had been broken into. Belke, as well as her father, Mark Loyd ("Loyd"), indicated that the rooms in their home were a mess and that various items were missing, including a karaoke machine. Belke called the police. After looking around some more, Belke realized that several items were missing from her bedroom, including some jewelry and CDs. {¶ 6} Lyndee Benson ("Benson") testified for the state that on October 29, 2003, she was at the home of her cousin, Larry Walker, along with appellant, his brother Evan, and sixteen-year-old Chris Beesler ("Beesler"). Benson indicated that appellant approached her and asked her if she wanted some jewelry. After responding in the affirmative, Benson said that appellant gave her various items of jewelry. Benson asked appellant where he got the jewelry from and Benson maintained that appellant stated that he got it from Belke. Benson testified that she asked appellant whether he got the jewelry from Belke herself or if he stole it, and appellant said that the jewelry was stolen. Benson also stated that a karaoke machine was in Larry Walker's living room on that date.
 {¶ 7} The following day at school, Benson showed Belke some of the jewelry and asked her if any of it belonged to her. Belke responded that the jewelry was hers and Benson gave her the items. Belke asked Benson where she got the jewelry from and Benson told her that appellant gave it to her. Benson and Belke went to the school office, and Belke called her mother. Benson told Belke that she had some more of her jewelry at her home and she returned it to her the next day. In a statement given to police, Benson indicated that she received the jewelry from appellant, who told her that he and his brother had broken into Belke's house.
 {¶ 8} Iva Walker, Larry Walker's wife, testified for the state that Benson was living with her and her husband. Iva Walker indicated that in late October 2003, appellant came to her home to visit Benson. According to Iva Walker, Benson told her that appellant had given her some jewelry. Iva Walker stated that appellant gave her four or five rings but she did not ask him where he got them from. Iva Walker also said that she saw a karaoke machine in her dining room that day and that the machine was not there prior to appellant's arrival.
 {¶ 9} Beesler testified for the state that he was at Larry and Iva Walker's house visiting Benson around the end of October 2003. Beesler indicated that appellant and Evan were already there when he arrived. Beesler stated that appellant showed him some jewelry and a karaoke machine and told him that he got the items from a house across the street. Beesler agreed to walk to the house across the street with appellant and Evan. Beesler recognized the house as Belke's home. According to Beesler, appellant and Evan knocked on Belke's door, opened it, and called Belke's name twice. The three boys walked into Belke's house. After Beesler said that this is somebody's home, Beesler stated that either appellant or Evan told him that the owners were on vacation. Approximately two minutes after Beesler left Belke's house, he testified that appellant and Evan asked him if he was going to tell on them and he responded that he would not. However, Beesler later told Belke who told her mother.
 {¶ 10} Pursuant to his May 13, 2004 decision, the magistrate entered a true finding beyond a reasonable doubt with respect to all three counts. The magistrate recommended that with respect to count one, burglary, appellant be committed to the Ohio Department of Youth Services for an indefinite term ranging from one year or until his twenty-first birthday. Regarding counts two and three, receiving stolen property and petit theft, the magistrate recommended that appellant be committed to the Ashtabula County Youth Detention Center for ninety-day terms on each count to be served concurrently with one another and concurrently with the commitment imposed on count one. The magistrate further recommended that appellant's probation be terminated unsatisfactorily.[1]
 {¶ 11} The trial court adopted the magistrate's decision with a detailed judgment entry on May 13, 2004. Appellant filed objections to the magistrate's decision and a motion to vacate judgment on May 27, 2004. According to its June 3, 2004 judgment entry, the trial court denied appellant's motion to vacate judgment.
 {¶ 12} Pursuant to its July 1, 2004 judgment entry, the trial court overruled appellant's objections and adopted the magistrate's decision pursuant to Juv.R. 40(E)(4)(b). It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 13} "[1.] The decision of the magistrate finding the juvenile true of burglary must be reversed as erroneously against the weight of the evidence.
 {¶ 14} "[2.] The court erred by failing to make independent review of the magistrate's decision, and failing to issue a final appealable order."
 {¶ 15} In his first assignment of error, appellant argues that the decision of the magistrate finding him true of burglary must be reversed as erroneously against the manifest weight of the evidence. Appellant stresses that there were no eyewitnesses to the break-in.[2]
 {¶ 16} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 17} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the [trier of fact], while `manifest weight' contests the believability of the evidence presented.
 {¶ 18} "* * *
 {¶ 19} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 20} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 21} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 22} We note that appellant argues that the magistrate's May 13, 2004 decision finding him delinquent for committing the act of burglary is against the manifest weight of the evidence. Although appellant posits that the magistrate's decision is against the manifest weight of the evidence, we believe that he is actually contending that the trial court erred by adopting the magistrate's decision since a magistrate's decision alone does not constitute a final, appealable order. In any event, it is clear that appellant's delinquency adjudication for committing the act of burglary is not against the manifest weight of the evidence.
 {¶ 23} In the case at bar, again, Belke and her father, Loyd, testified that their home was burglarized and that various items were missing including some jewelry and a karaoke machine. According to Benson, she was at Larry and Iva Walker's home, along with appellant, Evan, and Beesler. Benson said that appellant gave her jewelry, and ultimately told her that he stole the items from Belke. Benson also stated that a karaoke machine was in Larry and Iva Walker's living room on that date. The next day at school, Benson showed Belke some of the jewelry and Belke told her that the items belonged to her. In a statement given to police, Benson indicated that she received the jewelry from appellant, who told her that he and Evan had broken into Belke's house.
 {¶ 24} According to Iva Walker, Benson told her that appellant had given her some jewelry. Iva Walker stated that appellant gave her some jewelry as well. Iva Walker also said that she saw a karaoke machine in her dining room and that the machine was not there prior to appellant's arrival.
 {¶ 25} Beesler testified that he was at Larry and Iva Walker's house and that appellant showed him some jewelry and a karaoke machine that he got from a house across the street. Beesler agreed to walk to the house across the street and determined that it was Belke's residence. According to Beesler, appellant and Evan knocked on Belke's door, opened it, and called Belke's name twice. About two minutes after Beesler left Belke's house, he testified that appellant and Evan asked him if he was going to tell on them.
 {¶ 26} Based on the overwhelming, credible evidence presented, and pursuant to Schlee and Thompkins, supra, the trier of fact did not clearly lose its way in finding appellant's delinquency charge for burglary true beyond a reasonable doubt. Appellant's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, appellant contends that the trial court erred by failing to make an independent review of the magistrate's decision and failing to issue a final appealable order. Appellant stresses that the July 1, 2004 judgment entry merely restates the magistrate's decision without any further language and, therefore, must be remanded to the trial court.
 {¶ 28} R.C. 2505.02(B)(1) provides that: "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"
 {¶ 29} This court stated that: "`an entry merely incorporating the recommendations of a referee's report does not suffice as a judgment.'" In re Zakov (1995),107 Ohio App.3d 716, 717, quoting Wyatt v. Wyatt (Apr. 7, 1995), 11th Dist. No. 94-P-0085, 1995 Ohio App. LEXIS 5560, at 3.
 {¶ 30} We stated in In re Michael (1991),71 Ohio App.3d 727, 729-730, that:
 {¶ 31} "[a] judgment is generally defined as a pronouncement which determines the matters submitted to a court. State ex rel.Curran v. Brookes (1943), 142 Ohio St. 107 * * *. However, the adoption or rejection of the referee's report is not the matter which has been submitted to the court; rather, the report is merely an additional resource at the court's disposal in determining the issues before it. This determination must sufficiently address those issues so that the parties may know of their rights and obligations by referring only to that document known as the judgment entry.
 {¶ 32} "The characteristics of such a document have been described in Cox v. Cox (Mar. 15, 1991), [11th Dist.] No. 90-T-4396, * * *, 1991 WL 35642 (Judge Ford concurring at 3), which states:
 {¶ 33} "`It is fundamental that the trial court employ diction which should include sufficient operative, action-like and conclusionary verbiage to satisfy the foregoing fundamental elements. Obviously, it is not necessary for such directive to be encyclopedic in character, but it should contain clear language to provide basic notice of rights, duties, and obligations.'" (Parallel citation omitted.)
 {¶ 34} In the instant matter, appellant alleges that this appeal was not taken from a final appealable order and, thus, should be remanded.[3] However, we note that if the appeal were not taken from a final appealable order, the appropriate remedy would be dismissal. In re Zakov, supra, at 718.
 {¶ 35} Here, the magistrate issued his decision on May 13, 2004, which was adopted by the trial court on that same date. In its judgment entry, the trial court stated that:
 {¶ 36} "[t]he [c]ourt finds no error of law or other defect on the face of the [m]agistrate's [d]ecision filed May 13, 2004 and hereby adopts the [d]ecision as the judgment of this [c]ourt.
 {¶ 37} "IT IS THERFORE ORDERED, ADGUDGED AND DECREED:
 {¶ 38} "1. The [c]ourt finds [appellant] is [t]rue beyond a reasonable doubt as to all three counts including [b]urglary in violation of [R.C.] 2911.12(A)(2); [c]ount [t]wo, [r]eceiving [s]tolen [p]roperty, in violation of [R.C.] 2913.51, and [c]ount [t]hree, [p]etit [t]heft, in violation of [R.C.] 2913.02(A)(1).
 {¶ 39} "2. The [c]ourt finds as to the offense of [c]ount [o]ne * * * that [appellant] shall be committed indefinitely to the custody of the Ohio Department of Youth Services for a minimum [term] of one year indefinite to his [twenty-first] birthday in a facility operated by the Ohio Department of Youth Services. [Appellant] was previously on probation two times, and according to Probation Department has not been successful.
 {¶ 40} "3. The [c]ourt finds that [on] * * * [c]ounts [t]wo and [t]hree, [appellant] shall be confined [ninety] days in the Youth Detention Center, and that he shall be given credit for [twenty] days served, and that these sentences shall be concurrent to one another and concurrent to [c]ount [n]umber [o]ne.
 {¶ 41} "4. The [c]ourt finds that the probation shall be terminated unsatisfactorily.
 {¶ 42} "5. [Appellant] shall be held at the Youth Detention Center pending transportation to a facility operated by the Ohio Department of Youth Services.
 {¶ 43} "6. Ashtabula Area School District is responsible for educating [appellant].
 {¶ 44} "IT IS SO ORDERED."
 {¶ 45} Again, appellant filed objections to the magistrate's decision on May 27, 2004. As appellant correctly points out, in its July 1, 2004 judgment entry, the trial court stated that: "the objections are overruled, and the [m]agistrate's [d]ecision is adopted by the [c]ourt, pursuant to Juv.R. 40(E)(4)(b)." The purpose of the July 1, 2004 judgment entry was to rule on appellant's objections to the magistrate's decision. The inclusion of the "adoption" language merely served to reiterate the trial court's position pursuant to its May 13, 2004 judgment entry, where it actually adopted the magistrate's decision. The foregoing May 13, 2004 judgment entry clearly satisfied the requirements enumerated in In re Zakov and In re Michael,
supra, and determined the action pursuant to R.C. 2505.02(B)(1). Appellant's second assignment of error is without merit.
 {¶ 46} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
O'Neill, J., Grendell, J., concur.
[1] Appellant was previously on probation twice. However, the record does not specify the reason for appellant's probation.
[2] Appellant only challenges the delinquency charge for burglary and does not contest the other two counts of receiving stolen property and petit theft.
[3] We note that appellant does not challenge his sentence.